**Megan E. Glor, OSB No. 930178**
megan@meganglor.com
**MEGAN E. GLOR, ATTORNEYS AT LAW, P.C.**
707 NE Knott Street, Suite 101
Portland, OR 97212
Telephone:  (503) 223-7400
Facsimile:  (503) 751-2071

**Chris R. Youtz,** *Pro Hac Vice*
chris@sylaw.com
**SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC**
3101 Western Ave., Suite 350
Seattle, WA 98121
Telephone:  (206) 223-0303
Facsimile:  (206) 223-0246

*Attorneys for Defendant Samuel C. Rutherford III*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| STORED VALUE CARD, INC., d/b/a NUMI FINANCIAL,, <br><br> Plaintiff, <br><br> v. <br><br> SAMUEL C. RUTHERFORD III, and SIRIANNI YOUTZ SPOONEMORE HAMBURGER, PLLC, <br><br> Defendants. | NO. 3:25-cv-0224 7-YY <br><br> **DEFENDANT SAMUEL C. RUTHERFORD III MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11(b)** |

DEFENDANT RUTHERFORD'S MOTION FOR SANCTIONS

## I.  LOCAL RULE 7-1 CERTIFICATION AND SAFE HARBOR NOTIFICATION

Pursuant to Local Rule 7-1(a), counsel for Defendant Samuel C. Rutherford III conferred with counsel for Plaintiff Stored Value Cards, Inc., d/b/a NUMI Financial regarding this motion. No resolution was reached. This motion is served pursuant to Fed. R. Civ. P. 11(c)(2). It will not be filed or noted for consideration with the Court if all claims brought against Defendant Rutherford are dismissed or withdrawn within 21 days after service of this motion.

## II.  FACTS

### A.  The *Brown* Case

In 2014, Danica Brown filed a class action lawsuit against Central National Bank (CNB) concerning a prepaid debit card she was required to accept in order to receive funds that had been withheld while she was in custody following a protest in Portland, Oregon. The complaint alleged violations of the Electronic Fund Transfer Act ("EFTA").

The lawsuit also named Stored Value Cards ("Numi")—the plaintiff in this action—as a defendant in its capacity as the bank's program manager for the prepaid cards. The case was initially dismissed, but the Ninth Circuit reversed, holding that Ms. Brown had adequately stated claims under EFTA.

On remand, the district court certified an Oregon state class. Ms. Brown later moved to certify a nationwide class. In support of that motion, she submitted declarations from two individuals describing alleged ongoing EFTA violations: Michael Mahoney, a California resident, and Defendant Rutherford, a Washington resident.

DEFENDANT RUTHERFORD'S MOTION FOR SANCTIONS - Page 1

The court certified a nationwide class in the *Brown* litigation on July 13, 2023. During the course of that litigation, the bank that initially partnered with Numi to issue the release card received by Ms. Brown was replaced by other issuing banks, including Central Bank of Kansas City ("CBKC"), which later issued a release card to Defendant Rutherford.

Numi subsequently moved to require joinder of CBKC as a "necessary party," arguing that "the court will be unable to provide complete relief for class members whose damages resulted from fees imposed by the cardholder agreements of absent partner banks." *Brown v. Stored Value Cards, Inc.*, 2023 U.S. Dist. LEXIS 175278, at *5 (D. Or. Sept. 29, 2023).

The court denied the motion, expressly holding that Numi and its partner banks— including CBKC—are each independently responsible for their own alleged EFTA violations, and that claims against those banks need not be litigated within the *Brown* action. *Id.* at *6.

**B.    The *Brown* Settlement**

On March 8, 2024, the parties participated in a mediation at which an agreement was reached with CNB. Numi, by contrast, asserted that it was on the brink of bankruptcy and lacked the financial capacity to meaningfully contribute to the approximately $31 million in additional fees charged to *Brown* class members through cards issued by banks that were not defendants in the case. Numi claimed it could pay no more than $1 million, payable over five years, without seeking bankruptcy protection. Declaration of Chris R Youtz in Support of Sanctions (Youtz Decl.) at 1.

On March 11, 2024, counsel for Numi and class counsel executed a term sheet agreeing to seek a 45-day stay to permit class counsel to investigate Numi's financial condition through a forensic accountant and to assess whether the proposed settlement amount should be recommended to the class and the court. The term sheet further provided that, if the proposed settlement proceeded, the parties would negotiate and submit a long-form settlement agreement for court approval. *Id.*

On March 20, 2024 the Brown court stayed its proceedings until May 6, 2024 so that class counsel could investigate Numi's financial situation and consider its proposed settlement.

Significantly, the term sheet expressly provided that any release granted to Numi would not extend to third parties, including Numi's partner banks:

> 7. *Release.* Any release provided to Numi under a potential agreement arising out of this Term Sheet would be strictly limited to Numi and its officers, directors, and employees. The release would not extend to any third parties or entities.

Youtz Decl, *Exh. A* (¶ 7).

The purpose of this exclusion was to preserve the ability of class members to pursue relief against non-party partner banks that participated in the release card program within EFTA's one-year statute of limitations.

In June 2024, class counsel decided to recommend Numi's proposed settlement based on Numi's asserted financial condition, and the parties executed a long-form settlement agreement. That agreement, along with the settlement reached with CNB, was submitted to the Brown court for preliminary approval pursuant to Rule 23, prior to

dissemination of class notices advising class members of the proposed settlements and their right to opt out.

On August 7, 2024, Rutherford became the first class member to opt out of the *Brown* settlement after the opt-out period opened. The Brown settlement received final approval on December 10, 2024. The court ordered that the terms of the settlement agreements were binding on class members "except any members who timely opted out." Youtz Decl. *Exh. B* at 18.

## C.    The *Rutherford* Case

On April 18, 2024—while the *Brown* case was stayed and before any settlement had been reached with Numi—Rutherford filed a class action lawsuit against Central Bank of Kansas City ("CBKC") in the Western District of Washington, asserting claims arising from release cards issued to him by CBKC. The court subsequently certified a nationwide class and a Washington state subclass to pursue claims against CBKC in the *Rutherford* action.

In opposing class certification and seeking dismissal, CBKC argued that Rutherford and the class members he represents were barred from suing CBKC under the terms of Numi's settlement in *Brown*, even though CBKC was neither a party to nor a beneficiary of that agreement. The court rejected that argument, explaining:

> Because CBKC is liable for its own violations of the EFTA, the fact that the *Brown* class would provide relief from Numi for Numi's own violations does not address whether the claims in this case could have been tried in the *Brown* class. It appears the claims against CBKC could not have been litigated in *Brown*.

*Rutherford v. Cent. Bank of Kan. City*, 2024 U.S. Dist. LEXIS 206279, at \*11-12 (W.D. Wa. Nov. 13, 2024).

Counsel representing CBKC in the *Rutherford* action also represents Numi in the *Brown* litigation, which remains pending until Numi completes its obligations under its settlement agreement.

**D.    This Lawsuit.**

On December 4, 2025, Numi filed this lawsuit against Rutherford and his counsel, alleging Rutherford violated the *Brown* settlement agreement and/or tortiously interfered with that agreement by suing CBKC for claims arising from the release card CBKC issued to him. Numi filed this action despite knowing the *Brown* court expressly ordered that Rutherford was not bound by Numi's settlement agreement because he timely opted out of the settlement.

Numi's claims appear to arise from a separate contract with CBKC – a contract to which Rutherford was not a party and in which he had no involvement. That agreement requires Numi to indemnify CBKC if it is sued in connection with a release-card program managed by Numi.

The same contract gives CBKC ownership and control over documents and information concerning cardholders and all aspects of the release card programs Numi managed. The *Rutherford* court ordered CBKC to produce those documents and information. Numi, however, refused to provide those documents to CBKC to produce to Rutherford, instead applying CBKC with irrelevant and nonresponsive materials—

such as documents relating to golf tournaments, political campaigns, and holiday cards—which were then produced to Rutherford.

It is thus apparent that this lawsuit was filed to address Numi's potential indemnification liability to CBKC and Numi's contractual obligation to provide CBKC with program data and documents—obligations arising solely from Numi's agreement with CBKC—which were not addressed by any settlement agreement, let alone one to which Rutherford is a party.

In parallel, CBKC moved in the *Rutherford* action to stay that case, including court-ordered discovery obligations, pending resolution of this lawsuit.

This action was improperly filed against Rutherford and his counsel to avoid liabilities and contractual obligations Numi owes to CBKC. Numi's claims are not warranted by existing law or by any nonfrivolous argument for extending or modifying the law. Moreover, Numi and its counsel should know that there is no basis for this Court to exercise personal jurisdiction over Rutherford. Accordingly, sanctions against Numi and its counsel are warranted under Rule 11.

### III.   NUMI AND ITS COUNSEL HAVE NO FACTUAL OR LEGAL BASIS FOR ASSERTING THIS COURT HAS PERSONAL JURISDICTION OVER RUTHERFORD.

**A.   Personal jurisdiction in general.**

"Plaintiff has the burden of making a prima facie showing of personal jurisdiction." *IPSL, LLC v. Coll. of Mount Saint Vincent*, 383 F. Supp. 3d 1128, 1135 (D. Or. 2019). "'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.' *Picot*, 780 F.3d at 1211. Oregon's long-arm statute is co-

extensive with federal constitutional standards, so this Court need only determine whether its exercise of personal jurisdiction is consistent with constitutional due process." *Kruzel v. Molina Healthcare, Inc.*, No. 6:23-cv-01183-AA, 2025 U.S. Dist. LEXIS 159526, at *7 (D. Or. Aug. 18, 2025). "Courts recognize two forms of personal jurisdiction: (1) general or 'all-purpose' personal jurisdiction and (2) specific or 'case-linked' personal jurisdiction." *Id.*

Numi alleges only two purported bases for personal jurisdiction over Rutherford: (1) that Rutherford was a member of the *Brown* class, which reached a settlement agreement with Numi; and (2) that Rutherford submitted a declaration describing his experience receiving a release card in Tacoma, Washington, in support of class certification proceedings in the *Brown* litigation. Complaint at 2, ¶¶ 5–6.

Neither allegation provides a factual or legal basis for this Court to exercise personal jurisdiction over Rutherford.

**B.    There is no general jurisdiction over Rutherford.**

"General jurisdiction extends to 'any and all claims' brought against a defendant, but only where a defendant is 'essentially at home' in the forum state. *Ford Motor*, 141 S. Ct. at 1024 (citation omitted). Individuals are subject to general jurisdiction in their place of domicile. *Id.* (citing *Daimler AG*, 571 U.S. at 137). *PettyJohnBlue v. Delta Air Lines, Inc.*, 2025 U.S. Dist. LEXIS 202344, at *8 (D. Or. Oct. 14, 2025). Numi recognizes that Rutherford is a Washington resident and uses his residence as a basis for diversity jurisdiction. There is no general jurisdiction over him.

## C.    There is no specific jurisdiction over Rutherford.

The Ninth Circuit applies a three-part test to determine whether a defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015), *quoting*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The plaintiff bears the burden of satisfying the first two prongs of the test. *Picot*, 780 F.3d at 1211. Only if the plaintiff meets that burden does the burden shift to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Kruzel v. Molina Healthcare, Inc.*, No. 6:23-cv-01183-AA, 2025 U.S. Dist. LEXIS 159526, at *10–11 (D. Or. Aug. 18, 2025).

The nature of the claim determines whether the Court applies a "purposeful availment" or "purposeful direction" analysis. For contract-based claims, courts examine whether the defendant "purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Picot*, 780 F.3d at 1212. For tort claims, courts apply the purposeful-direction test and

DEFENDANT RUTHERFORD'S MOTION FOR SANCTIONS - Page 8

consider whether the "defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Id*. Here, Numi asserts breach-of-contract and tortious-interference claims. Neither theory supports the exercise of specific jurisdiction.

As to the contract claim, it is well established that a contract alone does not automatically establish minimum contacts with the forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). Rather, jurisdiction requires "actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Contacts that are "random, fortuitous, or attenuated" are insufficient. *Id.*

Those principles foreclose jurisdiction here. Numi is headquartered in California, and any obligations or benefits arising from its settlement agreement affect it there—not in Oregon. Rutherford's alleged conduct consists of filing a lawsuit in Washington against a Missouri-based bank. None of those acts occurred in Oregon, were directed at Oregon, or created any substantial connection with Oregon.

More fundamentally, Numi cannot premise jurisdiction on its settlement agreement in *Brown*. Rutherford opted out of that litigation before Numi's settlement became effective, and the *Brown* court expressly ruled that Rutherford and other opt-outs were "not bound" by the agreement. Invoking personal jurisdiction based on a contract is already disfavored; invoking it based on a contract that Rutherford did not negotiate, did not sign, is not a party to, and is expressly excluded from by court order is objectively unreasonable.

Plaintiff's attempt to link Rutherford's alleged tortious interference with the *Brown* settlement agreement to this forum fares no better. In assessing specific personal jurisdiction over tort claims, the Ninth Circuit applies the three-part "effects" test derived from *Calder v. Jones*. Under that test, defendants "purposefully direct" conduct at the forum only if they: 1) commit an intentional act; (2) expressly aim that act at the forum state; and (3) cause harm defendants know is likely to be suffered in the forum state. *Picot,* at 1214.

Even assuming Rutherford committed an "intentional act" by filing a lawsuit against CBKC, that act was not expressly aimed at Oregon. Rutherford filed suit in Washington against a Missouri-based bank, based on the bank's issuance of an unlawful release card in Tacoma, Washington. Nothing about that conduct targets Oregon. The fact that the *Rutherford* court later concluded that Rutherford's claims were typical of nationwide EFTA violations does not transform a Washington-based lawsuit into conduct expressly aimed at Oregon.

Nor does Numi plausibly allege forum-based harm. Numi asserts that it was "harmed" because Rutherford's lawsuit triggered indemnification obligations under Numi's separate agreement with CBKC. But Numi does not—and cannot—allege that Rutherford or his counsel even knew of any indemnification agreement when the CBKC lawsuit was filed. That agreement was not produced until months later.

Moreover, any harm Numi claims to suffer is not "likely to be suffered in the forum state." Numi is headquartered in California, and any financial or contractual consequences it faces are felt there—not in Oregon. That Numi later experienced

consequences flowing from a private indemnification agreement does not establish express aiming or forum-based harm under *Picot*.

Finally, Numi's own conduct underscores the absence of jurisdiction. When it entered into the *Brown* settlement, Numi was fully aware of its indemnification arrangements with CBKC and other banks. Yet it expressly agreed that any release would not extend to "third parties," thereby preserving claims against those banks. Having made that choice, Numi cannot now manufacture personal jurisdiction over Rutherford based on downstream consequences of agreements to which he was not a party and of which he had no knowledge.

The requirements for specific personal jurisdiction are not met. More importantly for Rule 11 purposes, no reasonable litigant or counsel could conclude otherwise. Numi's assertion of personal jurisdiction over Rutherford lacks any factual or legal foundation, and sanctions are therefore warranted.

Numi's assertion that this Court has personal jurisdiction over Rutherford because he submitted a declaration in support of class certification in *Brown* is also frivolous. At the time Rutherford submitted his declaration, he was neither a named plaintiff nor a member of any certified class in *Brown*. He participated solely as a non-party witness describing his experience receiving a release card in Tacoma, Washington.

When the *Brown* court later certified a nationwide class, Rutherford became a class member by operation of law—not by any affirmative act of participation. That status did not transform him into a litigating party. As the Supreme Court explains:

> Unlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection. In most class actions an absent plaintiff is provided at least with an opportunity to "opt out" of the class, and if he takes advantage of that opportunity he is removed from the litigation entirely.

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-11, 105 S. Ct. 2965, 2974, 86 L.Ed.2d 628, 641 (1985).

Rutherford exercised that right. On August 7, 2024, he timely opted out of the *Brown* litigation and thereafter had no further involvement in the case, including no connection to the approval of the settlement agreements.

Moreover, the declaration on which Numi relies was submitted more than a year before any settlement agreement was reached in *Brown* and bears no relationship to the claims asserted in this action. Submitting a factual declaration as a non-party witness—describing conduct that occurred entirely outside Oregon—does not constitute purposeful availment, purposeful direction, or consent to personal jurisdiction.

No reasonable litigant or counsel could conclude otherwise. Numi's attempt to premise personal jurisdiction on Rutherford's declaration is unsupported by law or fact and reinforces the Rule 11 violations at issue.

### IV.  PLAINTIFF HAS NO FACTUAL OR LEGAL BASIS TO ASSERT BREACH OF CONTRACT CLAIMS AGAINST RUTHERFORD.

Numi asserts two breach-of-contract claims against Rutherford. Neither has any factual or legal foundation.

First, Numi alleges that Rutherford breached the *Brown* settlement agreement by filing a lawsuit against CBKC. That claim fails at the threshold. When Rutherford filed his lawsuit, Numi had not yet reached any settlement agreement with the *Brown* class. And when a settlement was later reached, it did not become effective as to Rutherford because he timely opted out of the case before the received final approval. Rutherford is therefore not a party to—nor bound by—the agreement Numi claims was breached.

Second, Numi alleges that Rutherford violated the implied covenant of good faith and fair dealing. That claim fails for the same reason. Under settled law, the implied covenant arises only from an existing contractual relationship and applies solely to the parties to that contract. Because no contract exists between Rutherford and Numi, there is no covenant—express or implied—for Rutherford to breach.

Numi's contract claims lack any legal or factual basis. No reasonable litigant or counsel could conclude otherwise.

## V.    PLAINTIFF HAS NO FACTUAL OR LEGAL BASIS TO ASSERT A TORTIOUS INTERFERENCE CLAIM AGAINST RUTHERFORD.

Numi's tortious-interference claim fails for multiple, independent reasons.

As a threshold matter, Numi does not allege—nor could it plausibly allege—that Rutherford had knowledge of Numi's indemnification agreement with CBKC at the time he filed suit. That agreement was not produced until months after the CBKC litigation commenced. Without knowledge of the alleged interfering contract, a tortious-interference claim cannot lie.

However, Numi itself was fully aware, when Rutherford sued CBKC, that it had agreed to indemnify CBKC for certain claims. Yet Numi raised no objection to Rutherford's filing of that lawsuit, nor to the subsequent certification of a nationwide class and Washington subclass in the Rutherford action. Only later did Numi file this lawsuit, asserting—without support—that Rutherford's claims against CBKC somehow constitute an "indirect" lawsuit against Numi.

That theory is legally untenable. Suing a party for its own statutory violations does not amount to a direct or indirect claim against an entity that you agreed to indemnify that party. Courts have squarely rejected the notion that a claim against an indemnified party operates as an "indirect" claim against the indemnitor. As one court explained:

> Chartis was not released in the Settlement Agreement, and any claim that Batoff may ultimately face pursuant to his duty to indemnify will come from Chartis, not Charbonneau. Indeed, ***Batoff has not cited a single case, let alone one binding on this court, to bolster his argument that a claim against an indemnified party operates as an "indirect claim" against the indemnitor. See Pl.'s Resp. 23-24. Nor have I found any such decision***. Batoff's breach of contract claim regarding the Settlement Agreement must therefore fail as a matter of law, and so I will grant the motion to dismiss with respect to Count II of the amended complaint.

*Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 968 (E.D. Pa. 2015) (emphasis added).

Accepting Numi's theory would convert every lawsuit against an insured or indemnified defendant into a lawsuit against the indemnitor—an outcome unsupported by law and plainly untenable. And in any event, Rutherford is expressly not bound by the "indirect" release provision in the *Brown* settlement agreement, a fact Numi and its counsel continue to ignore.

Numi's tortious-interference claim is also independently barred by the litigation-privilege doctrines of both Oregon and Washington. Oregon law provides an absolute privilege for statements and conduct undertaken in connection with judicial proceedings, including claims for tortious interference. *Palmer v. Olson*, 335 Or. App. 586, 590, 560 P.3d 79, 82 (2024). That privilege applies not only to statements, but also to actions taken in connection with litigation. *Chard v. Galton*, 277 Or. 109, 113 (1977); *Franson v. Radich*, 84 Or. App. 715 (1987); *Mantia v. Hanson*, 190 Or. App. 412, 423 (2003).

Washington law is in accord. The litigation privilege protects participants from retaliatory, derivative lawsuits and has been expressly applied to tortious-interference claims arising from the filing of lawsuits. *Valve Corp. v. Bucher Law, PLLC*, 34 Wn. App. 2d 727, 742 (2025).

Here, Numi's tortious-interference claim rests entirely on Rutherford's filing of a lawsuit against CBKC—a party not covered by the *Brown* settlement—for CBKC's own alleged violations of the EFTA. The *Rutherford* court has already determined that those claims were properly brought to obtain relief from CBKC for its own conduct. Any economic consequences Numi faces arise solely from its private indemnification agreement with CBKC, not from any actionable interference by Rutherford.

Because Rutherford's conduct is protected by absolute litigation privilege and because the essential elements of tortious interference are absent, Numi's claim lacks any factual or legal foundation. Numi and its counsel should have known as much. The filing of this claim is unjustified and warrants sanctions under Rule 11.

## VI.   SANCTIONS ARE APPROPRIATE UNDER RULE 11

Rule 11 sanctions are warranted when a pleading is filed (1) for an improper purpose, including to cause unnecessary delay; (2) when the legal claims are not warranted by existing law or by a nonfrivolous argument for its extension, modification, or reversal; or (3) when the factual contentions lack evidentiary support. Any one of these violations independently supports the imposition of sanctions. *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025).

### A.   This case was brought for an improper purpose

This lawsuit was filed for improper purposes, including to cause unnecessary delay and to collaterally attack rulings already made in the *Rutherford* action. The *Rutherford* court has repeatedly and expressly rejected the argument that the *Brown* settlement bars claims by former *Brown* class members against CBKC, holding:

> Therefore, CBKC's interests are not aligned with Numi in the *Brown* action…the Court has determined in this case CBKC is sued based on its own violations of the EFTA and not Numi's violations. …Therefore, the Numi settlement does not limit members of the *Brown* class from asserting claims here.

*Rutherford v. Cent. Bank of Kan. City*, 2025 U.S. Dist. LEXIS 26377, at *6 (W.D. Wash. Feb. 13, 2025).

Despite those rulings, Numi filed this action asserting the same theories the *Rutherford* court had already rejected. Shortly thereafter, CBKC—represented by the same counsel who represents Numi in the *Brown* litigation—moved in *Rutherford* to stay that case pending resolution of this action. The evident purpose of that maneuver was to delay

and obstruct enforcement of discovery orders requiring CBKC to produce materials and information under its ownership and control that are currently held by Numi.

## B.    The claims are not warranted by existing law and are frivolous

The legal claims asserted in the complaint are not warranted by existing law and are frivolous.

Counts I and II (breach of contract and breach of the implied covenant of good faith and fair dealing) rest entirely on the false premise that Rutherford is a party to, and bound by, Numi's settlement agreement in *Brown*. It is elementary class-action law that a settlement does not bind class members until (1) they are afforded the opportunity to opt out and (2) the court grants final approval. And the *Brown* court expressly ordered that class members who timely opted out—like Rutherford—are not bound by the settlement agreement. There is no reasonable legal basis for asserting that Rutherford is subject to any contractual obligation under that agreement.

Count III (tortious interference) is equally frivolous. Rutherford has an absolute litigation privilege to file suit seeking relief for alleged EFTA violations. Any economic consequences Numi claims to suffer arise solely from the indemnification agreement it voluntarily negotiated with CBKC. Absent that private agreement, Rutherford's lawsuit would impose no consequences on Numi at all.

Likewise, as detailed above, Numi's assertion that this Court has personal jurisdiction over Rutherford is not merely incorrect—it is frivolous. Rutherford has not engaged in any conduct in Oregon related to the claims asserted, and no reasonable application of jurisdictional doctrine supports haling him into this forum.

**C.      The complaint lacks evidentiary support.**

The complaint is also replete with factual allegations that lack evidentiary support.

Numi asserts that Rutherford "really intends" to sue Numi rather than CBKC. That assertion is baseless. Rutherford sued CBKC because it issued the release card at issue and is far better positioned to satisfy a judgment than Numi, which represented during settlement proceedings that it was on the brink of bankruptcy.

Numi further alleges that the Rutherford action was brought "in violation of Section 3.1 of the Settlement Agreement" and that Rutherford "effectively sued Numi using CBKC as a proxy" when he filed suit on April 18, 2024. (Complaint. ¶ 70.) Those allegations are demonstrably false. At that time, no settlement agreement with Numi had been executed—let alone approved or made effective.

Numi also falsely alleges that Rutherford seeks to prevent Numi from issuing release cards. In fact, the Rutherford complaint seeks relief solely against CBKC and asks the court to prohibit CBKC—not Numi—from issuing future cards. In support of that mischaracterization, Numi inconsistently claims to be the issuer of the release cards (Complaint ¶¶ 57, 91), despite having represented to federal regulators that it was not the issuer and that CBKC was. Youtz Decl., Ex. A.

The complaint contains additional misstatements that have nothing to do with the claims asserted. For example, Numi claims a c*y pres* award in *Brown* was granted to a "law firm." It was not. The award was made to the Human Rights Defense Center, a tax-exempt nonprofit organization that has received *cy pres* awards in other cases in addition

to private donations. Numi had the opportunity to object to that *cy pres* award but chose not to do so.

This action was filed for an improper purpose, advances claims that are legally frivolous, and relies on factual allegations lacking evidentiary support. Sanctions against Numi and its counsel are therefore warranted under Rule 11.

## VII.  Conclusion

This Court should order Numi and its counsel to show cause why it should not be sanctioned under Rule 11, including being required to pay Rutherford's attorney's fees.

DATED: January 16, 2026.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

 */s/ Chris R. Youtz*
Chris R. Youtz, *Pro Hac Vice*
chris@sylaw.com
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303

MEGAN E. GLOR, ATTORNEYS AT LAW, P.C.
Megan E. Glor, OSB No. 930178
megan@meganglor.com
707 NE Knott Street, Suite 101
Portland, OR  97212
Tel. (503) 223-7400

**Attorneys for Samuel C. Rutherford III**

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4,632 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED: January 16, 2026.

          */s/ Chris R. Youtz*

          Chris R. Youtz, *Pro Hac Vice*